**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**CHARLESTON DIVISION**

| | | |
|---|---|---|
| KENDRA BROWN, Individually and as Personal Representative of the Estate of Minor Jalen Carter, | ) ) ) ) | |
| Plaintiff, | ) ) | No. 2:18-cv-02948-DCN-KDW |
| vs. | ) ) | **ORDER** |
| CITY OF NORTH CHARLESTON and OFFICER WAYNE PAVLISCHEK, | ) ) ) ) | |
| Defendant. | ) ) | |

This matter is before the court on United States Magistrate Thomas E. Rogers, III's ("Magistrate") report and recommendation ("R&R") recommending that the court grant defendant Wayne Pavlischek's ("Pavlischek") motion for summary judgment, ECF No. 47, decline to exercise jurisdiction over plaintiff Kendra Brown's ("Brown"), individually and as personal representative of the estate of minor Jalen Carter ("Carter"), remaining state law claims against defendant City of North Charleston ("NCHS") (together with Pavlischek, "defendants"), and remand this action to the Charleston County Court of Common Pleas. For the reasons set forth below, the court adopts in part and rejects in part the R&R, grants Pavlischek's motion for summary judgment, ECF No. 47, and grants NCHS's motion for summary judgment, ECF No. 45.

**I.  BACKGROUND**

The R&R ably recites the detailed facts of the case, and because it is unnecessary to recapitulate the pleadings that constitute the factual record, this order dispenses with

a recitation thereof.  Like the R&R, the court construes the facts in the light most favorable to the non-moving party in considering the motion for summary judgment.

Brown filed this action in the Charleston County Court of Common Pleas ("State court") on October 4, 2018.  ECF No. 1-1.  NCHS removed the case on October 31, 2018.  ECF No. 1.  The complaint included claims against: (1) defendants for violations of 42 U.S.C. § 1983 – Excessive Force and Due Process ("claim 1"); (2) NCHS violations 42 U.S.C. § 1983 – Search & Seizure and Due Process ("claim 2"); and (3) NCHS for wrongful death, negligence and gross negligence under the South Carolina Tort Claims Act ("Tort Claims").  ECF No. 1-1 at 6–9.  On November 15, 2018, Brown agreed to dismiss without prejudice the portions of claims 1 and 2 brought against NCHS.  ECF No. 7.  As a result, the only remaining claims in this matter are the portions of claims 1 and 2 against Pavlischek ("Federal Claims") and the Tort Claims.  Id.

On October 4, 2019, Pavlischek filed a motion for summary judgment on the Federal Claims.  ECF No. 47.  Brown filed her response on October 18, 2019, ECF No. 53, and Pavlischek replied on October 24, 2019, ECF No. 55.  On October 4, 2019, NCHS filed a motion for summary judgment on the Tort Claims.  ECF No. 47.  Brown filed her response on October 18, 2019, ECF No. 52, and NCHS replied on October 24, 2019, ECF No. 54.  On June 15, 2020, the R&R recommended granting Pavlischek's motion for summary judgment on the Federal Claims and remand the Tort Claims to State court.  ECF No. 59.  NCHS filed its objections to the R&R on June 22, 2020.  ECF No. 60.  The deadline to file objections to the R&R has passed without Brown filing or indicating to the court her intention to file an objection.  28 U.S.C. § 636(b)(1); Fed. R.

Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d).  As such, the matter is now ripe for the court's review.

## II.  STANDARD

### A.    Objections to R&R

The magistrate judge makes only a recommendation to the court.  Mathews v. Weber, 423 U.S. 261, 270 (1976).  The recommendation carries no presumptive weight, and the responsibility to make a final determination remains with the court.  Id. at 270-71.  The court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge . . . or recommit the matter to the magistrate judge with instructions."  28 U.S.C. § 636(b)(1).  The court is charged with making a de novo determination of any portion of the R&R to which a specific objection is made.  Id.  However, in the absence of a timely filed, specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).  Furthermore, "[a] party's general objections are not sufficient to challenge a magistrate judge's findings."  Greene v. Quest Diagnostics Clinical Labs., Inc., 455 F. Supp. 2d 483, 488 (D.S.C. 2006) (citation omitted).  Finally, the failure to file specific, written objections to the R&R results in a party's waiver of the right to appeal from the judgment of the district court based upon such recommendation.  United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).

### B.    Summary Judgment

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "Only disputes over facts that might affect the outcome of the suit

under the governing law will properly preclude the entry of summary judgment."

Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, (1986).  "[S]ummary judgment will not lie if the dispute about a material fact is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.  At the summary judgment stage, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in his favor.  Id. at 255.

### III.  DISCUSSION

#### A.    Federal Claims

There were no objections by any party to the R&R's recommendation that the court grant Pavlischek's motion for summary judgment on the Federal Claims for two reasons: (1) because Brown failed to present sufficient evidence to create an issue of fact as to whether Pavlischek violated any of Carter's constitutional rights and (2) Pavlischek is entitled to qualified immunity.  ECF No. 59 at 8–10.  In the absence of a timely filed, specific objection to the R&R's recommendation that the court grant Pavlischek's motion for summary judgment on the Federal Claims, the court reviews the R&R only for clear error.  Diamond, 416 F.3d 310 at 315.  Having reviewed the R&R's recommendation that the court grant Pavlischek's motion for summary judgment on the Federal Claims, the court finds no clear error.  Therefore, the court adopts the R&R's recommendation and grants Pavlischek's motion for summary judgment on the Federal Claims.

#### B.    Supplemental Jurisdiction

Because the R&R recommended dismissal of the Federal Claims, which provides the basis for the court's jurisdiction over this matter, the R&R further recommended that the court decline to exercise jurisdiction over the Tort Claims because comity favors

remand since the remaining claims are quintessential state law questions. ECF No. 59 at 11. NCHS objects to the R&R's recommendation that the court decline to exercise supplemental jurisdiction over the Tort Claims. ECF No. 60 at 1. Specifically, NCHS contends that the R&R errs by declining to exercise supplemental jurisdiction without properly weighing the supplemental jurisdiction factors as set forth in <u>Crosby v. City of Gastonia</u>. <u>Id.</u> at 3 (<u>quoting</u> 635 F.3d 634, 644 (4th Cir. 2011)). Reviewing this objection <u>de novo</u>, the court agrees and rejects the R&R's recommendation that it decline to exercise supplemental jurisdiction over the Tort Claims. ECF No. 59 at 11 (failing to weigh all the factors necessary to determine if the court should retain supplemental jurisdiction).

The supplemental jurisdiction statute provides the court discretion to dismiss or retain jurisdiction over a case when, as in this instance, it has ''dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3); <u>see</u> <u>Shanaghan v. Cahill</u>, 58 F.3d 106, 110 (4th Cir. 1995) (citation omitted) ("[T]rial courts enjoy wide latitude in determining whether . . . to retain jurisdiction over state claims when all Federal Claimss have been extinguished."). The supplemental jurisdiction factors were set forth by the United States Supreme Court in <u>Carnegie-Mellon University v. Cohill</u>, 484 U.S. 343 (1988). The <u>Cohill</u> factors to consider are: judicial economy, convenience, fairness, and comity. 484 U.S. at 351 n.7. District courts in the Fourth Circuit have considered other related factors, including: (1) whether the claim involves straightforward application of well-defined case law, <u>Caughman v. S.C. Dep't of Motor Vehicles</u>, 2010 WL 348375, at *2 (D.S.C. Jan. 26, 2010); (2) whether the parties have completed discovery, <u>id.</u>; and (3)

length of time the case has been pending in federal court, <u>Varner v. SERCO, Inc.</u>, 2018 WL 1305426, at *4 (D.S.C. Mar. 12, 2018).

Applying these factors, the court finds that the underlying considerations of whether to retain supplemental jurisdiction over the Tort Claims suggest the court should exercise its supplemental jurisdiction.  This case has been pending since October 2018, discovery has concluded, the summary judgment motion on the remaining claim has been fully briefed and is ripe for the court's review, the state court would need to acquaint itself with a case that this court is already familiar with, which would needlessly cause delay[1], and the Tort Claims involves straightforward application of well-defined case law.  Although the principle of comity favors remanding the case to State court, the factors of judicial economy, convenience, and fairness weigh in favor of the court exercising supplemental jurisdiction on the Tort Claims.  Therefore, the court rejects the R&R's recommendation and exercises supplemental jurisdiction on the Tort Claims based on the <u>Cohill</u> factors.

Having found that the court should retain jurisdiction on the Tort Claims, the court will now address NCHS's objection to the Magistrate's failure to rule on the merits of its motion for summary judgment in the R&R.

**C.    State Tort Claims**

NCHS also objected to the Magistrate's failure to rule on the merits of its motion for summary judgment in the R&R.  ECF No. 60 at 1.  Having found that the court

---

[1]  This is especially true in the COVID-19 world in which we live today where everything necessarily has to be accomplished remotely.  My state court colleagues have ten times the case load and one tenth the help in normal times; if this were to be remanded to the state court there is no telling how long this case would fester before resolution.  The case is ready for resolution in this court and this court is well prepared to resolve it.

should retain jurisdiction of the Tort Claims, the court sustains NCHS's objection and proceeds with a substantive review of its motion for summary judgment of the Tort Claims.

Brown's Tort Claims against NCHS allege that the city should be held liable based on three different theories: (1) wrongful death, gross negligence, and negligence for Pavlischek's actions during his pursuit of Carter, ECF No. 1-1 at 8–9; (2) gross negligence by NCHS in the implementation of its policies and gross negligence by NCHC in hiring, training, and supervising Pavlischek, ECF No. 52 at 8–9; and (3) negligence by NCHS in the implementation of its policies and NCHS's negligence in hiring, training, and supervising Pavlischek, id.

NCHS argues that it should not be held liable for wrongful death, gross negligence, or negligence based on Pavlischek's actions because certain exceptions to waiver of immunity under the South Carolina Tort Claims Act apply. ECF No. 45-1 at 8–11. Specifically, NCHS contends that S.C. Code Ann. § 15-78-60(5), (6), and (20) apply to allow for immunity under the South Carolina Tort Claims Act in this instance. Id. Additionally, NCHS argues that Brown has presented no evidence of negligence or gross negligence in NCHS's implementation of its policies, or its hiring, training, and/or supervision of Pavlischek, and that the NCHS's national accreditation from the Commission on Accreditation for Law Enforcement Agencies ("CALEA") demonstrates that there is no genuine issue of material fact about NCHS's implementation of its policies, or its hiring, training, or supervision of Pavlischek. Id. at 17. Furthermore, NCHS asserts that Brown only raises claims of negligence and gross negligence in her response brief to the motion for summary judgment and did not sufficiently allege that

7

the city failed to properly screen Pavlischek before hiring him, or that the city failed to properly supervise Pavlischek, and therefore, the court should not consider those arguments.  ECF No. 54 at 9.

The court begins its analysis by reviewing the exceptions to waiver of immunity under the South Carolina Tort Claims Act.

### 1.    Exceptions to Waiver of Immunity

#### a.    Application of the Gross Negligence Standard

Before examining the substantive arguments related to immunity under the South Carolina Tort Claims Act, the court must address whether NCHS must meet a gross negligence standard in order for the exceptions to apply in this instance.  Brown argues that "when a governmental entity asserts multiple exceptions to the waiver of immunity and at least one of the exceptions contains a gross negligence standard, [the court] must interpolate the gross negligence standard into the other exceptions."  ECF No. 52 at 4, n. 2 (quoting Proctor v. Dep't of Health and Envtl. Control, 628 S.E.2d 496, 513 (S.C. Ct. App. 2006).  Brown posits that because NCHS initially asserted as an affirmative defense the exceptions listed in S.C. Code Ann. § 15-78-60 generally, the court must apply the gross negligence standard into the specific exceptions that NCHS asserts in its summary judgment motion.  Id.  NCHS contends that because none of the exceptions that apply to this case contain a gross negligence standard, the court should not hold NCHS to a gross negligence standard solely because of its initial answer to Brown's complaint.  The court agrees with NCHS.

The South Carolina Supreme Court has squarely addressed when a court should apply a gross negligence standard from one immunity provision of the South Carolina

8

Torts Claims Act to an immunity provision that does not contain a gross negligence standard:

> [I]n order for the gross negligence standard from one immunity provision [of the South Carolina Torts Claims Act] to be read into an immunity provision that does not contain a gross negligence standard, the immunity provision containing the gross negligence standard must first apply to the case.  We disavow any suggestion to the contrary . . . In many instances, a governmental entity may initially plead entitlement to immunity pursuant to a subsection containing a gross negligence standard.  In many of those instances, that particular immunity may ultimately not apply to the facts of the case.  In such a case, the gross negligence standard contained in that immunity is not to be read into applicable immunity subsections that do not contain a gross negligence standard.

Repko v. Cty. of Georgetown, 818 S.E.2d 743, 750 (S.C. 2018).  Here, NCHS argues exceptions that apply to the facts of this case which can be found in § 15-78-60(5), (6), and (20).  None of these immunity provisions contain a gross negligence standard.  This is precisely the scenario the Repko court faced when it stated that the gross negligence standard should not be read into the other immunity provisions and "disavow[ed] any suggestion to the contrary."  818 S.E.2d at 750.  Therefore, the court finds that a gross negligence standard must not be applied to the exceptions to waiver of immunity under the South Carolina Tort Claims Act in this instance.

### b.    § 15-78-60(6)

NCHS contends that § 15-78-60(6) shields them from liability in this instance because Pavlischek's actions leading up to and during his pursuit of Carter were a result of his methods of providing police protection.  ECF No. 45-1 at 11.  Brown argues that the § 15-78-60(6) exception applies only when there is a failure to provide police protection, and not when the police is providing protection services.  ECF No 52 at 6.  "The governmental entity is not liable for a loss resulting from . . . civil disobedience,

riot, insurrection, or rebellion or the failure to provide the method of providing police or fire protection." S.C. Code Ann. § 15-78-60(6). NCHS relies on the South Carolina Court of Appeals's decision in Huggins v. Metts, 640 S.E.2d 465 (S.C. Ct. App. 2006) to support its proposition that § 15-78-60(6) applies to both the method of providing police protection and failure to provide police protection. ECF No. 54 at 6.

In Huggins, state police responded to a call stating that Charles Huggins, III, "was threatening to burn down several homes and to commit suicide." 640 S.E.2d. at 465. Ultimately, police shot and killed Huggins because he was armed with two butcher knives and continued to approach police after being warned to "not come any closer or [police] will shoot." Id. at 466. A federal district court granted summary judgment in favor of the police and declined to exercise supplemental jurisdiction over the remaining state claims. Id. Subsequently, a South Carolina circuit court also granted summary judgment in favor of police, and the South Carolina Court of Appeals affirmed the circuit court holding that § 15-78-60(6) "specifically exempts the Police from liability concerning the methods which they choose to utilize to provide police protection." 640 S.E.2d at 467.

The facts before the court are analogous to Huggins. In Huggins, the officers were at the scene of the incident because their presence was requested, they were responding directly to the circumstances that lead to their services being requested, the court found the police did not violate the constitutional rights of Huggins, and they were providing police protection. Here, Pavlischek was invited to "regularly patrol[] the apartment complex" by the property management company in order to "deter behavior like loitering and the use and/or sale of illegal drugs." ECF No. 45-9 at 3. Pavlischek

10

approached Carter for the same reason he was asked to patrol the area, because he saw Carter loitering and smelled the scent of marijuana.  ECF No. 59 at 2.  As the court has already found, Pavlischek did not violate any of Carter's constitutional rights during his interactions with Carter, and he was providing police protection.

Brown further contends that Carter should not be allowed to invoke a waiver to immunity under § 15-78-60(6) because of NCHS's alleged failure to properly train Pavlischek on how to apprehend a fleeing suspect and the city's alleged failure to implement proper procedures for officers' on-foot pursuit of a fleeing suspect.  ECF No. 52 at 6.  The Huggins court has explicitly rejected this argument by holding that § 15-78-60(6) "specifically exempts [government entities] . . . from liability concerning the methods which they choose to utilize to provide police protection," and this exemption includes "the preparation and events leading up to the time . . . preceding [the events that give rise to the claim]."  640 S.E.2d. at 467.  The Huggins court went on to state that "[e]ven were we to accept all of Huggins's assertions as true, it would not remove the immunity which the legislature has bestowed on the Police in this situation."  Id.

The court finds Huggins persuasive.  Pavlischek's actions during his pursuit of Carter concerns the manner in which the police chose to provide police protection.  As such, even accepting all of Brown's allegations as true, the court finds that § 15-78-60(6) applies in this instance[2] and that NCHS is entitled to immunity to all claims of wrongful

---

[2]  NCHS argues that § 15-78-60(5) and § 15-78-60(20) also provide NCHS with immunity in Brown's claims of wrongful death, gross negligence, and negligence that arise from Pavlischek's actions during his pursuit of Carter.  ECF No. 45-1 at 8–11.  Because the court finds that § 15-78-60(6) applies in this instance to shield NCHS from liability in Brown's claims of wrongful death, gross negligence, and negligence that arise from Pavlischek's actions during his pursuit of Carter, the court need not address whether those waivers of immunity apply.

death, gross negligence, and negligence that arise from Pavlischek's actions during his pursuit of Carter. Therefore, the court grants NCHS's motion for summary judgment as it relates to the claims of wrongful death, gross negligence, and negligence that arise from Pavlischek's actions during his pursuit of Carter.

Having determined that § 15-78-60(6) applies to immunize NCHS from the claim of wrongful death, gross negligence, and negligence that stem from Pavlischek's actions during his pursuit of Carter, the court will now turn its attention to the portion of Brown's complaint that alleges gross negligence and negligence by NCHS in the implementation of its policies and in hiring, training, and supervising Pavlischek.

### 2. Gross Negligence and Negligence

NCHS argues that the court should grant summary judgment as to the gross negligence and negligence portion of the Tort Claims because Brown has presented no evidence to create a genuine issue of material fact as to whether NCHS was negligent or grossly negligent in implementing its policies or in hiring, training, and/or supervising Pavlischek. ECF No. 45-1 at 17. NCHS contends that its national accreditation from the CALEA establishes that NCHS fulfilled its duty in the implementation of its policies and of its hiring, training, or supervision of Pavlischek. Id.

Brown contends that NCHS had knowledge that Pavlischek resigned from the City of Charleston Criminal Justice Academy ("CJA") under allegations of racist conduct, and the fact that NCHS did not show evidence of additional screening based on this incident creates a genuine issue of material fact as to whether NCHS was negligent in its hiring of Pavlischek. ECF No. 52 at 8. Additionally, Brown contends that Pavlischek's history of incidents that violated departmental policy creates a genuine issue

of material fact as to whether NCHS was negligent in its training and supervision of Pavlischek.  Id. at 9.  Finally, Brown alleges that because the City of Charleston has a written policy or procedure regarding when an officer should engage in a foot pursuit, while NCHS does not, there is a genuine issue of material fact as to whether NCHS was negligent in its implementation of its policies.  Id.

As a threshold issue, the court must address whether Brown sufficiently alleged claims of negligence and gross negligence.  NCHS asserts that Brown only raises claims of negligence and gross negligence in her response brief to the motion for summary judgment and did not sufficiently allege that the city failed to properly screen Pavlischek before hiring him, or that the city failed to properly supervise Pavlischek, and therefore, the court should not consider those arguments.  ECF No. 54 at 9.  In reviewing the complaint, the court finds that Brown properly alleges negligence and gross negligence of NCHS's hiring and supervision of Pavlischek in her complaint.  ECF No. 1-1.

The pleading standard requires that the complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks omitted); see also Fed. R. Civ. P. 8(a)(2).  The United States Supreme Court held that the "plain statement" must "possess enough heft"—that is, "factual matter"—to set forth grounds for the plaintiff's entitlement to relief and "to state a claim to relief that is plausible on its face."  Twombly, 550 U.S. at 557, 570.  In Ashcroft v. Iqbal, the Supreme Court further explained that the standard of facial plausibility requires pleading of "factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." 556 U.S. 662, 678 (2009) (citing <u>Twombly</u>, 550 U.S. at 556). The complaint must present "enough fact to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." <u>Twombly</u>, 550 U.S. at 556.

Here, Brown's complaint alleges that NCHS "was indifferent with respect to failure to train, supervise, correct, and or educate Officer Pavlischek in important types of training such as when to pull a gun and use of delay [sic] force." ECF No. 1-1 at 5. The complaint further alleges that NCHS's "customs, policies, practices and/or procedures . . . directed, encouraged, allowed, and/or ratified . . . officers for [NCHS] [t]o teach or tolerate improper handling, investigations and arrest/seizure of citizens." <u>Id.</u> at 7. The complaint also alleges NCHS "failed to properly hire, train, instruct, monitor, supervise, evaluate, investigate and discipline officers," and that the harm alleged resulted from such purported failures. <u>Id.</u> The complaint then incorporated by reference each of these allegations in the Tort Claims. <u>Id.</u> at 8. The court finds that these allegations present sufficient non-conclusory factual allegations to support reasonable inferences NCHS's liability for gross negligence or negligence and for Brown's entitlement for relief from such allegations. Therefore, the court will consider the merits of Brown's claim of negligence and gross negligence in NCHS's hiring and supervision of Pavlischek.

Having established which substantive allegations are appropriate for consideration, the court will begin its analysis by addressing the gross negligence claims.

### a. Gross Negligence

NCHS contends that because it adheres to the CALEA standards for policies, hiring, training, and supervision, Brown will be unable to show that NCHS intentionally failed or did not exercise "slight care" in its implementation of policies, hiring, training, or supervision of Pavlischek. ECF No. 45-1 at 16–18. In her response, Brown fails to

14

address whether she has met the standard for creating a genuine issue of material fact that NCHS was grossly negligent in its implementation of policies, hiring, training, or supervision.  See generally ECF No. 52 (only addressing negligence in NCHS implementation of policies, hiring, training, and supervision).  "Gross negligence is the intentional conscious failure to do something which it is incumbent upon one to do or the doing of a thing intentionally that one ought not to do."  Bass v. S.C. Dep't of Soc. Servs., 780 S.E.2d 252, 258–59 (S.C. 2015) (quoting Etheredge v. Richland Sch. Dist. One, 534 S.E.2d 275, 277 (S.C. 2000)).  In other words, "[i]t is the failure to exercise slight care."  Id. at 259 (citation omitted).  "Gross negligence has also been defined as a relative term, and means the absence of care that is necessary under the circumstances." Id. (quoting Etheredge, 534 S.E.2d at 277).  "Normally, the question of what activity constitutes gross negligence is a mixed question of law and fact."  Id.  However, "when the evidence supports but one reasonable inference, the question becomes a matter of law for the court."  Id. (quoting Clyburn v. Sumter Cty. Sch. Dist. No. 17, 451 S.E.2d 885, 887–88 (S.C. 1994)).

In his affidavit, the lieutenant in charge of the training division, Lieutenant Andrew Glover ("Glover"), states that he had knowledge and access to all training records for all officers and knowledge and experience in the hiring, training, and supervision of officers in NCHS.  ECF No. 45-12 at 2.  In his review of Pavlischek's hiring, Glover avers that NCHS subjected Pavlischek to an eight-phase process involving an initial background check, written and physical ability testing, a full background check, psychological examinations, a physical examination, a polygraph, and multiple interviews.  Id. at 4.  In his review of Pavlischek's training, Glover declares that

Pavlischek received all training required and specifically states that Pavlischek passed his training on apprehension of a fleeing suspect and the use of force.  Id. at 2.  In his review of Pavlischek's supervision, Glover avows that Pavlischek's supervisors properly reviewed his incident reports, conducted interviews, wrote an interdepartmental report, and determined his actions did not require additional training or supervision.  Id. at 3.

In his review of NCHS policies, Glover states in his affidavit that NCHS's accreditation by the CALEA shows that the police department adheres to "446 state-of-the-art standards relating to policies and procedures, administration, operations and support services" which are "above and beyond the minimum standard required by the state of South Carolina and are designed to help law enforcement agencies follow standards which reflect the current thinking and experience of law enforcement practitioners and researchers."  Id. at 4–5.

Brown has provided no evidence to refute Glover's affidavit nor does she demonstrate that NCHS failed to provide at least "slight care" in its implementation of policies, hiring, training, or supervision of Pavlischek.  As such, the evidence supports but one reasonable inference in this instance; NCHS provided at least "slight care" in its implementation of policies, hiring, training, and supervision of Pavlischek, and consequently, NCHS was not grossly negligent.  Viewing the facts in the light most favorable to Brown, the court finds that there are no genuine issues of material fact as to whether NCHS was grossly negligent in its implementation of policies, hiring, training, and supervision of Pavlischek.  Therefore, the court grants NCHS's motion for summary judgment as it relates to the claim of gross negligence that arises from NCHS's implementation of policies, hiring, training, and supervision of Pavlischek.

Having found that NCHS was not grossly negligent in its implementation of policies, hiring, training, and supervision of Pavlischek, the court proceeds with its review of the negligence portion of Brown's Tort Claims, which is broken into three subparts: (1) negligent hiring ("negligent hiring"); (2) negligent supervision and training ("negligent supervision and training"); and (3) negligence in implementation of its policies ("negligent policies").  Before addressing each of these subparts of Brown' negligence claim in turn, the court will determine if the public duty rule applies to shield NCHS from liability to the negligence claim in its entirety.

### b.  Public Duty Rule

NCHS argues that because the public duty rule applies as an absolute bar to liability for any negligence claim, it is entitled to summary judgment.  ECF No. 54-1 at 14–15.  Brown contends that because the negligence portion of the Tort Claims arises from common law, and not from a statutorily-imposed duty, the public duty rule does not apply in this instance.  ECF No. 52 at 6–7.  NCHS claims that the public duty rule does provide government entities from liability in claims based on common law.  ECF No. 54 at 8.  The court disagrees with NCHS.

"The 'public duty' rule presumes statutes which create or define the duties of a public office have the essential purpose of providing for the structure and operation of government or for securing the general welfare and safety of the public.  Such statutes create no duty of care towards individual members of the general public." Arthurs ex rel. Estate of Munn v. Aiken Cty., 551 S.E.2d 579, 582 (S.C. 2001) (citing Summers v. Harrison Constr., 381 S.E.2d 493, 496 (S.C. Ct. App. 1989)).  The public duty rule is a negative defense which denies an essential element of the plaintiff's cause of action: the existence of a duty of care to the individual plaintiff.  Id. (citing Rayfield v. South

17

Carolina Dep't of Corrections, 374 S.E.2d 910, 916 (S.C. Ct. App. 1988), cert. denied 379 S.E.2d 133 (S.C. 1989).

However, the South Carolina Supreme Court makes clear that "[w]hen, and only when, the plaintiff relies upon a statute as creating the duty does a doctrine known as the 'public duty rule' come into play." Id. at 582. Here, Brown is solely relying on common law in the negligence portion of the Tort Claims. Because Brown does not allege that NCHS breached a duty created by statute in the negligence portion of the Tort Claims, NCHS cannot utilize the public duty rule to negate the existence of a duty of care.

### c.  Negligent Hiring

In Brown's negligent hiring subpart, she argues that NCHS had knowledge that Pavlischek resigned from the CJA under allegations of racist conduct, and that fact that NCHS did not show evidence of additional screening based on this incident creates a genuine issue of material fact as to whether NCHS was negligent in its hiring of Pavlischek. ECF No. 52 at 8. NCHS contends that there was no negligence in the hiring of Pavlischek because Pavlischek was subjected to its eight-phase hiring process, involving psychological examinations, polygraphs, and multiple interviews, after which NCHS concluded that Pavlischek was not a public risk. ECF No. 45-1 at 17; see generally ECF No. 45-12 (Glover affidavit attesting to the methods utilized in Pavlischek's hiring process). Generally, in a negligence action, a plaintiff must show that: (1) the defendant owes a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages. Madison ex rel. Bryant v. Babcock Ctr., Inc., 638 S.E.2d 650, 656 (S.C. 2006). When the claim alleges an employer is negligent for the hiring of its employee, the

plaintiff may bring a direct claim of negligence against the employer for the employee's

actions.  James v. Kelly Trucking Co., 661 S.E.2d 329, 331 (S.C. 2008).

"[W]here an employer knew or should have known that its employment of a

specific person created an undue risk of harm to the public, a plaintiff may claim that the

employer was itself negligent in hiring . . . the employee."  James, 661 S.E.2d at 330.

"Negligent hiring cases 'generally turn on two fundamental elements—knowledge of the

employer and foreseeability of harm to third parties.'"  Kase v. Ebert, 707 S.E.2d 456,

459 (S.C. 2011) (quoting Doe v. ATC, Inc., 624 S.E.2d 447, 450 (S.C. 2005)).  The South

Carolina Court of Appeals explained in Doe that these two elements:

> are not necessarily mutually exclusive, as a fact bearing on one element may
> also impact resolution of the other element.  From a practical standpoint,
> these elements are analyzed in terms of the number and nature of prior acts
> of wrongdoing by the employee, and the nexus or similarity between the
> prior acts and the ultimate harm caused.  Such factual considerations—
> especially questions related to proximate cause inherent in the concept of
> foreseeability—will ordinarily be determined by the factfinder, and not as a
> matter of law.  Nevertheless, the court should dispose of the matter on a
> dispositive motion when no reasonable factfinder could find the risk
> foreseeable or the employer's conduct to have fallen below the acceptable
> standard.

624 S.E.2d at 450 (citations omitted).  In short, the court must determine if there is a

genuine issue of material fact as to whether NCHS's knowledge of Pavlischek's prior

incident of alleged racism before his hiring created a foreseeable risk that Pavlischek's

actions during his pursuit of Carter would lead to Carter's death.  Even assuming in the

light most favorable to Brown, the court finds that no reasonable factfinder could find

that hiring Pavlischek created a foreseeable risk.

First, the prior wrongdoing by Pavlischek did not occur while he was in the line of

duty, nor did it involve any interaction with a citizen.  Pavlischek ate fried chicken as a

form of silent protest after a fellow classmate was dismissed for making a racist remark about fried chicken to an African-American classmate, and Pavlischek resigned from the CJA after his protest was viewed as racist. ECF No. 52 at 8 (citing ECF No. 45-11 at 17). While the court finds Pavlischek's actions sophomoric, there is nothing about that conduct that would suggest that NCHS should foresee any risk of Pavlischek while serving in his role as an officer or in his pursuit of a suspect. Here, there is a clear lack of similarity between the wrongdoing and the actions that led to the harm of Carter.

Next, Pavlischek's "silent protest" was the only instance of prior wrongdoing that Brown claimed NCHS had knowledge of that would evince negligent hiring by NCHS. ECF No. 52 at 8. This low number of incidents further supports the conclusion that NCHS should not have foreseen Pavlischek to be a risk. Additionally, Pavlischek's previous wrongdoing was allegedly racially motivated, and there is no evidence that Pavlischek's actions during his pursuit of Carter were racially motivated. Although Brown says that "the [c]ourt should be aware that [Carter] was African-American, and Pavlischek is [c]aucasian," ECF No. 52 at 8, Brown does not contend that race played any factor in Pavlischek's pursuit of Carter. Most importantly, the Department of Motor Vehicles found that Carter was responsible for his own death. ECF No. 45-17. As the court previously held, Pavlischek did not commit a violation of Carter's constitutional rights and was not liable for Carter's death.

In sum, even assuming the facts in the light most favorable to Brown, the nature of prior acts of wrongdoing by Pavlischek, the minimal number of prior acts of alleged wrongdoing by Pavlischek, and the lack of nexus or similarity between the prior acts and the ultimate harm caused, the court finds that no reasonable factfinder could find the risk

of Carter's death foreseeable based on Pavlischek's wrongdoing prior to being hired.
Therefore, the court grants summary judgment in favor of NCHS as to the negligent
hiring subpart of Brown's Tort Claims.

### d.  Negligent Supervising and Training

In Brown's negligent supervising and training subpart, she argues that because
NCHS knew that Pavlischek violated the vehicle pursuit policy three times in an
eighteen-month period and because NCHS failed to subsequently provide Pavlischek
with additional and supplemental training, there is a genuine issue of material fact as to
whether NCHS was negligent in its supervision and training of Pavlischek.  ECF No. 52
at 9.  NCHS contends that it was not negligent in the supervision of Pavlischek because
NCHS followed all the CALEA protocols necessary in response to Pavlischek's policy
violations, and, based on those protocols, NCHS determined no additional supervision
was necessary.  ECF No. 45-1 at 17; see generally ECF No. 45-12 (Glover affidavit
attesting to the methods utilized in the supervision of Pavlischek).  NCHS also argues
that it was not negligent in the training of Pavlischek because NCHS followed all of its
CALEA-accepted policies for training Pavlischek, including on-going training on all
NCHS department policies, and that Brown has provided no evidence that Pavlischek
failed to complete the training required by the state or the department, or that such
training did not meet the standard of care.  ECF No. 54 at 8–9; see generally ECF No. 45-
12 (Glover affidavit attesting to the methods utilized in the training of Pavlischek).

A plaintiff's claim that his or her employer was itself negligent in supervision is
analyzed under the same standard as a claim that the employer was itself negligent in
hiring.  James, 661 S.E.2d at 330.  "Negligent training is merely a specific negligent
supervision theory by another name."  Holcombe v. Helena Chem. Co., 238 F. Supp. 3d

21

767, 772 (D.S.C. 2017) (citing <u>Gainey v. Kingston Plantation</u>, 2008 WL 706916, at *7 n.

4 (D.S.C. Mar. 14, 2008) ("It does not appear that South Carolina recognizes a claim for

negligent training separate and apart from one for negligent supervision.")).  As such, the

key question in both a negligent failure to supervise claim and a negligent failure to train

claim is whether the employer knew or should have known of the danger the employee

posed to others.  <u>Id.</u> (citing <u>Snowden v. United Rentals (N. Am.) Inc.</u>, 2015 WL 5554337,

at *8, n. 6 (D.S.C. Sept. 21, 2015) (noting the foreseeability requirement applies to pure

negligent supervision claims).  Therefore, both claims are dependent on the two basic

elements of "knowledge of the employer and foreseeability of harm to third parties.'"

<u>Kase</u>, 707 S.E.2d at 459 (quoting <u>Doe</u>, 624 S.E.2d at 450)).

  Again, the court examines these elements by examining "the terms of the number

and nature of prior acts of wrongdoing by the employee, and the nexus or similarity

between the prior acts and the ultimate harm caused," cognizant that the court should

only grant summary judgment "when no reasonable factfinder could find the risk

foreseeable or the employer's conduct to have fallen below the acceptable standard."

<u>Doe</u>, 624 S.E.2d at 450 (citations omitted).  In short, the court must determine if there is a

genuine issue of material fact as to whether NCHS's lack of additional and supplemental

training and supervision of Pavlischek created a foreseeable risk that Pavlischek's actions

during his pursuit of Carter would lead to Carter's death based on NCHS's knowledge of

Pavlischek's incidents of violating the department's vehicle pursuit policy.  Even viewing

the facts in the light most favorable to Brown, the court finds that no reasonable

factfinder could find that NCHS's supervision or training of Pavlischek created a

foreseeable risk or that Pavlischek's conduct would fall below the acceptable standard.

There is a degree of similarity between Pavlischek's prior incidents of wrongdoing and Pavlischek's actions in pursuit of Carter. Although each of Pavlischek's violations of department policy involved a vehicle pursuit, and Pavlischek's pursuit of Carter was a foot chase, both involved the pursuit of a suspect. A reasonable factfinder could find a nexus or similarity between the prior acts and Pavlischek's actions in pursuit of Carter. Additionally, three incidents of violation of departmental vehicle policy in an eighteen-month span is not an overwhelming number of violations, but it is also not an insignificant amount of violations. A reasonable factfinder could find that many violations should require additional supervision and training.

Nonetheless, a reasonable factfinder could not find NCHS's failure to provide additional and supplemental training or supervision beyond its standard training and supervision presented a foreseeable risk in this instance because Brown has not put forth any evidence that Pavlischek was in violation of NCHS's policy during his pursuit of Carter nor that Pavlischek's actions were the proximate cause of Carter's harm. In fact, Glover attested to the fact that "Pavlischek's actions were consistent with those of a reasonable officer placed in the same situation . . . [and] . . . were consistent with training provided by [NCHS] Police Department and in conformance with all applicable [NCHS] Police Department polices." ECF No. 45-12 at 4. Together with the fact that the court has already held that Pavlischek did not commit a violation of Carter's constitutional rights, there is simply no evidence that Pavlischek's actions in pursuit of Carter violated any federal, state, or NCHS law or policy. It is unreasonable to suggest that NCHS should have foreseen that its failure to provide additional and supplemental supervision

or training for an officer after previous policy violations would create a risk when the actions of the accused officer did not violate any federal, state, or NCHS law or policy.

Furthermore, no reasonable factfinder could find NCHS's conduct to have fallen below the acceptable standard. Glover attests that NCHS's training and supervision adhere to the CALEA standards, which "are above and beyond the minimum standard required by the state of South Carolina and are designed to help law enforcement agencies follow standards which reflect the current thinking and experience of law enforcement practitioners and researchers." ECF No. 45-12 at 6. Glover states that Pavlischek successfully completed all NCHS training, including the apprehension of a fleeing suspect and use of force. Id. at 2. Glover further declared that in his review of interdepartmental reports and regular reviews, NCHS found that Pavlischek did not require additional supervision as a result of his previous policy violations. While Brown argues that NCHS should have provided additional and supplemental supervision and training for Pavlischek, there is simply no evidence in the record that create a genuine issue of material fact as to whether NCHS's supervision and training for Pavlischek fell below the acceptable standard.

In sum, even viewing the facts in the light most favorable to Brown, no reasonable factfinder could find that NCHS should have foreseen its failure to provide additional and supplemental supervision or training for an officer after previous policy violations would create a risk when the actions of the accused officer did not violate any federal, state, or NCHS law or policy and the accused officer's actions were not the proximate cause of the harm. Furthermore, no reasonable factfinder could find that NCHS supervision and training for Pavlischek fell below the acceptable standard.

Therefore, the court grants summary judgment in favor of NCHS as to the negligent supervision and training subpart of Brown's Tort Claims.

### e. Negligent Implementation of Policies

In Brown's negligent policies subpart, she argues that because the City of Charleston Police Department has a specific foot pursuit policy, and NCHS did not have a specific foot/bicycle policy, there is a genuine issue of material fact as to whether the absence of such a specific policy constitutes negligence. ECF No. 52 at 9. NCHS contends that neither the state of South Carolina nor CALEA requires a specific foot pursuit policy, so the absence of such a specific policy does not constitute negligence. ECF No. 54 at 10. Generally, in a negligence action a plaintiff must show that: (1) the defendant owes a duty of care to the plaintiff; (2) the defendant breached the duty by a negligent act or omission; (3) the defendant's breach was the actual and proximate cause of the plaintiff's injury; and (4) the plaintiff suffered an injury or damages. Madison, 638 S.E.2d at 656. The absence of any one of these elements is sufficient to grant summary judgment to the defendant. S.C. State Ports Auth. v. Booz-Allen & Hamilton, Inc., 346 S.E.2d 324, 325 (S.C. 1986).

Here, Brown has not established that NCHS has breached a duty by failing to have a specific foot pursuit policy. Brown contends that because both the City of Charleston and NCHS are CALEA certified, NCHS should also specific foot pursuit policy. Brown suggests that NCHS's lack of a specific foot pursuit policy means that the policies may not be in adherence with the CALEA or the state of South Carolina standards. In reviewing both the standards of CALEA and South Carolina, the court did not find a requirement for police departments in South Carolina to have a specific foot pursuit policy. Additionally, Glover attests that NCHS policies adhere to the CALEA

25

standards which "are above and beyond the minimum standard required by the state of South Carolina." ECF No. 45-12 at 6. Brown does not refute Glover's statements. Furthermore, in her deposition Sergeant Cindy Hughes ("Hughes") stated that NCHS's use of force policy adequately addressed the policy for when an officer should engage in a foot pursuit. ECF No. 52-5 at 5. Brown does not refute Hughes's statements.

The court commends the City of Charleston for going beyond the requirements of both the state of South Carolina and the CALEA in implementing a foot pursuit policy; however, the City of Charleston's policy has no impact on whether NCHS was negligent. The court should not and will not find a breach of a duty when NCHS's policies are "above and beyond the minimum standard required by the state of South Carolina," simply because a neighboring city went even further. As such, the court finds that NCHS did not breach its duty by failing to have a specific foot pursuit policy. Furthermore, even if the court were to find that NCHS did breach its duty by failing to have a specific foot pursuit policy, the court would still grant summary judgment in favor of NCHS because Brown did not create a genuine issue of material fact that such a breach was the proximate cause of Carter's harm. As stated above, the court has already determined that Pavlischek was not in violation of any federal, state, or NCHS law or policy during his pursuit of Carter and that Pavlischek's pursuit of Carter was not the proximate cause of the harm.

In sum, the court finds that NCHS did not breach a duty by failing to have a specific foot pursuit policy nor was their failure to have a specific foot pursuit policy the proximate cause of Carter's harm. The absence of either of those elements is sufficient to

grant summary judgment to the defendant.  Therefore, the court grants summary judgment in favor of NCHS as to the negligent policies subpart of Brown's Tort Claims.

Having found that summary judgment is appropriate in all parts of Brown's Tort Claims, the court grants NCHS's motion for summary judgment.

## IV.  CONCLUSION

For the foregoing reasons the court **ADOPTS IN PART AND REJECTS IN PART** the R&R, **GRANTS** Pavlischek's motion for summary judgment, and **GRANTS** NCHS's motion for summary judgment.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON**
**UNITED STATES DISTRICT JUDGE**

**July 29, 2020**
**Charleston, South Carolina**

27